Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 6939 | **DATE** | 1/9/2002 |
| **CASE TITLE** | Joe Janazzo, Sr. vs. FleetBoston Financial Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny plaintiff's motion to remand [5-1] and for mandatory abstention[5-2]. This case is set for status on 1/24/2002 @ 10:00 a.m.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 15 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
**JAN 1 5 2002**

JOE JANAZZO, SR. d/b/a The Track Shack, )
Individually and on behalf of a class of )
similarly situated persons, )
　)
　　　　Plaintiff, )
　) Case No. 01 C 6939
v. )
　) Judge Wayne R. Andersen
FLEETBOSTON FINANCIAL )
CORPORATION, )
　)
　　　　Defendant. )

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of plaintiff, Joe Janazzo, to remand this action to the Circuit Court of Cook County or, in the alternative, for mandatory abstention. For the following reasons, we deny plaintiff's motion.

## BACKGROUND

### I. Plaintiff's Complaint

Plaintiff filed his complaint for damages in tort and for equitable relief against defendant Fleet Boston Financial Corporation ("Fleet") in the Circuit Court of Cook County. Plaintiff, the owner of a small retail beverage business, had entered into a "Merchant Processing Agreement" ("MPA") with JRA222, Inc. d/b/a/ Credit Card Center ("CCC" or "Debtor") allowing installation of an ATM machine on his business premises. CCC, a Philadelphia-based company, entered into MPA's with plaintiff and a proposed class consisting of approximately 17,000 other retail merchants throughout the United States. Pursuant to the MPA, ATM customers would be charged a transaction fee for the use of the ATM, and the merchant plaintiffs would receive 85% of all surcharged

/ 7

## DISCUSSION

I. <u>Motion To Remand For Lack Of Subject Matter Jurisdiction</u>

Pursuant to 28 U.S.C. § 1334(b), federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The Supreme Court has acknowledged that the "related to" language of § 1334(b) constitutes a jurisdictional grant "of some breadth." <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 307-08 (1995). "Related to" jurisdiction applies not only to causes of action directly involving the debtor, but also to "suits between third parties which have an effect on the bankruptcy estate." <u>Id</u>. at 307 n.5. "A case is 'related' to a bankruptcy when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." <u>In re Memorial Estates, Inc.</u>, 950 F.2d 1364, 1368 (7th Cir. 1992). <u>See also</u> <u>Diamond Mortgage Corp. v. Sugar</u>, 913 F.2d 1233, 1239 (7th Cir. 1990).

This case is plainly related to the Bankruptcy Case because its outcome will have a direct and substantial effect on the Bankruptcy Case. Plaintiff's only claim is based solely on the contractual obligations of the debtor CCC to the plaintiff class. By necessity, plaintiff's claim will require a determination of whether the approximately $10 million in ATM fees constitutes the Debtor's property. Plaintiff asserts that his putative class has an unrecorded superior interest in the bulk of the ATM transaction fees–proceeds that have already been remitted by the Debtor in partial reduction of the Debtor's secured indebtedness to Fleet–that now trumps the prior public, perfected liens and security interests of Fleet and all other lien holders.

If, as Fleet contends, the Debtor had a property interest in the ATM surcharges it received and administered, then such amounts were properly subject to Fleet's senior lien, and the current

3

transactions as revenue on the ATM terminal. The balance of the surcharge, 15%, would be allocated to CCC. The complaint alleges that pursuant to these Agreements, the class is owed approximately $10 million in ATM surcharge transaction fees charged by CCC to ATM customers.

II. The Bankruptcy Proceeding

On June 6, 2001, CCC filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Eastern District of Pennsylvania. As of its petition date, CCC estimated that the total value of its personal property assets was $51,646,970.07.

Prior to CCC's bankruptcy, Fleet had loaned approximately $12.5 million to CCC pursuant to the parties' loan and security documentation. Fleet's loan was secured by a senior lien on substantially all of CCC's personal property assets and accounts. Prior to its bankruptcy filing, CCC was in default of its obligations to Fleet under the parties' loan and security documentation. By the time of CCC's bankruptcy filing, the principal amount of Fleet's secured claim against CCC was approximately $500,000. Fleet has filed a proof of secured claim in the Bankruptcy Court in the principal amount of $500,000 plus other indebtedness under the loan documents.

On September 4, 2001, Fleet filed with the Bankruptcy Court a complaint to determine the validity, priority, and extent of liens and other interests and for declaratory relief. This complaint, which names as defendants creditors of CCC including the plaintiff class, seeks, among other things, a determination by the Bankruptcy Court that the class does not have any property interest in, or other valid claim to, the ATM surcharges charged by CCC and that Fleet's claim is secured and superior to that of any defendant, including the plaintiff class herein.

Fleet then filed its Notice of Removal in this Court seeking removal on two bases-- plaintiff's claims are related to CCC's bankruptcy proceedings, and diversity jurisdiction.

2

$500,000 amount of Fleet's secured claim against the Debtor should not be altered in the bankruptcy. In the absence of plaintiff's class action, the Bankruptcy Court will administer the remainder of the Debtor's estimated $51.6 million in assets among creditors with allowed claims which would presumably include Fleet's current undisputed $500,000 secured claim. Thus, once Fleet receives the $500,000 it is owed, the remaining assets of the estate would be allocated among the Debtor's other creditors in accordance with their priorities.

If, on the other hand, plaintiff is correct that the Debtor had no rights whatsoever in 85 % of the ATM fees, then Fleet's lien arguably did not attach to such proceeds and Fleet may have to pay roughly $10 million to plaintiff's putative class. If plaintiff were to prevail, the Debtor would still owe to Fleet the $10 million in disgorged loan obligations and the amount of Fleet's secured claim against the Debtor would increase to approximately $10.5 million.

Thus, the net economic impact on the Debtor's estate is clear–Fleet could have a $10.5 million secured claim against the very same pool of assets that now secure its $500,000 secured claim. This would reduce the amount potentially available to other creditors in the bankruptcy. Fleet could then receive $10.5 million (rather than merely $500,000) out of the remaining amount of the Debtor's estimated $57 million in assets before other secured creditors, administrative priority claimants and unsecured creditors could receive distributions from the estate. Such an outcome would not only "have an effect on the [Debtor's] bankruptcy estate" under <u>Celotex</u>, but would also substantially affect both "the amount of property for distribution" and "the allocation of property among creditors" in the Bankruptcy Case. <u>Celotex</u>, 514 U.S. at 307 n.5; <u>In re Memorial Estates, Inc.</u>, 950 F.2d at 1368. As such, this case is clearly "related to" the Debtor's Bankruptcy Case under

Section 1334(b). See In re Cardinal Indus., Inc., 126 B.R. 754 (Bankr. S.D. Ohio 1991); Apex Investment Assoc., Inc. v. TJX Companies, 121 B.R. 522, 525 (N.D. Ill. 1990).

Moreover, the adjudication of the plaintiff's class action necessarily involves a determination of the scope and extent of property of the Debtor, the allowance, amount, validity and priority of Fleet's secured claim against the Debtor and the allocation of assets among creditors. These issues are traditionally the province of the Bankruptcy Court and such matters constitute "core proceedings" of the Bankruptcy Court under 28 U.S.C. § 157(b). Indeed, the determination of whether property of the Debtor is subject to a constructive trust or not–the crux of plaintiff's complaint–has widely been held to be a "core proceeding" within the jurisdiction of the federal bankruptcy courts. See, e.g., In re Robert D. Johnson, 960 F.2d 396, 401 (4th Cir. 1992) ("clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court, and such proceedings must be considered core proceedings"). Accordingly, since the predicate legal issues implicated by plaintiff's class action are themselves core proceedings, the Bankruptcy Court has jurisdiction not only to hear them, but to enter a final order disposing of them. Thus, plaintiff's claim is clearly "related to" the Bankruptcy Case.

In an attempt to avoid this result, plaintiff proffers a number of arguments. First, plaintiff argues that his claim "is not asserted against the debtor, CCC, but solely against Fleet." Plaintiff cannot avoid "related to" jurisdiction merely by craftily refusing to name the Debtor. To the contrary, the Supreme Court has explicitly stated that "related to" jurisdiction applies not only to causes of action directly by or against the Debtor, but also to "suits between third parties which have an effect on the bankruptcy estate." Celotex, 514 U.S. at 307 n.5; Cardinal Indus., 126 B.R. at 757-58. Because this is precisely such a case, this Court has jurisdiction.

5

Plaintiff next argues that because the Debtor remitted the funds at issue to Fleet prior to the commencement of the Bankruptcy Case, the dispute somehow does not "affect the amount of property available for distribution." The timing of Fleet's receipt of the funds at issue, however, in no way affects this Court's ability to exercise "related to" jurisdiction. That Fleet received the funds at issue prior to the commencement of the Bankruptcy Case simply has no bearing on this Court's "related to" jurisdiction. Instead, it is the effect on the estate that matters. Here, as discussed above, if plaintiff prevails in this case, the effect on the bankruptcy estate will be substantial.

Faced with the fact that his own allegations establish "related to" jurisdiction, plaintiff next argues that this Court's jurisdiction is defeated because "Fleet has not filed a claim with the Bankruptcy Court, nor quantified the amount of any potential claim." Although the actual filing of a proof of claim by a secured creditor is simply not a requirement for "related to" jurisdiction, this argument is now moot because Fleet filed a Proof of Claim in the Bankruptcy Case on October 10, 2001.

Plaintiff's related arguments that the Debtor potentially may not have any assets to distribute and that Fleet must prove the "precise dollar amounts from the [D]ebtor's schedules or other creditors' claims" also are not persuasive. It is more than enough to show the direct and material impact on the Bankruptcy Case that will likely occur by increasing Fleet's $500,000 secured claim to $10.5 million. In order to determine that this action is "related to" the Bankruptcy Case, this Court need not engage in a mini-bankruptcy evidentiary hearing, as implied by plaintiff, ruling on the difficult issues of the valuation of the assets of the Debtor's estate, whether the other secured creditors have valid and enforceable liens, and the allowance of administrative priority claims and the claims of other unsecured creditors. All of these issues are for the Bankruptcy Court to decide.

In sum, resolution of this case will have a very real and substantial effect on the Bankruptcy Case. Therefore, we find that federal "related to" jurisdiction does exist. Since we find that federal jurisdiction exists pursuant to 28 U.S.C. § 1334(b) because the claims are related to the bankruptcy proceedings, we need not reach the issue of whether diversity jurisdiction exits.

II. Mandatory Abstention

Plaintiff next argues that this Court is required to abstain pursuant to 28 U.S.C. § 1334(c)(2). Plaintiff, however, has failed to meet the requirements established by that statute. In order to prevail on a motion for mandatory abstention pursuant to 28 U.S.C. §1334(c)(2), the moving party must demonstrate that: 1) there is no separate basis for jurisdiction apart from bankruptcy; and 2) the case can be timely adjudicated in the state court. Plaintiff, in this case, cannot satisfy the statutory requirements.

Without reaching the issue of whether this Court has any other basis for jurisdiction, plaintiff's request for mandatory abstention must be denied because plaintiff has failed to present any evidence that this matter could be timely adjudicated in the state court. It is well established that, under 28 U.S.C. §1334(c)(2), plaintiff has the burden of proving that this action can be timely adjudicated in state court. J.D Marshall Int'l, Inc. v. Redstart, Inc., 74 B.R. 651, 654-55 (N.D. Ill. 1987). Plaintiff may not meet his burden merely by arguing that a proceeding can be timely adjudicated in state court. In re Georgou, 157 B.R. 847, 851 (Bankr. N.D. Ill. 1993). Instead, plaintiff must present evidence.

The relevant evidence illustrates that this case could not be timely adjudicated in state court. Courts discussing the timely adjudication element of mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) have looked to the following factors: 1) backlog of the state court's calendar; 2) status

of the bankruptcy proceeding; 3) complexity of issues; and 4) whether the state court proceeding would prolong the administration or liquidation of the estate. J.D. Marshall Int'l, 74 B.R. at 654-55; Georgou, 157 B.R. at 851. In this case, each of these factors illustrates that this case could not be timely adjudicated in state court.

First, the most recent Annual Report of the Illinois Courts shows that for jury cases of more than $50,000 pending in the Circuit Court of Cook County, it takes an average of 43.5 months from the date a case is filed until a verdict is rendered. The extraordinary length of time it would likely take this case to wind its way through the Cook County Court system illustrates that this case cannot be timely adjudicated in the state court.

Second, the status of the bankruptcy proceeding does not favor mandatory abstention. The schedule set by the Bankruptcy Court provides for a fast-track resolution of this dispute, with a discovery cut-off of December 26, 2001 and the final pre-trial conference to be held on March 7, 2002.

Third, the nature of the issues involved favors adjudication in federal court. Whether the ATM fees are property of the bankruptcy estate or subject to a constructive trust are traditional subjects within the expertise of bankruptcy courts.

Finally, a lengthy jury trial in state court would unnecessarily prolong the distribution of assets to creditors in the Debtor's Bankruptcy Case. This is particularly true here because the Debtor's Bankruptcy Case is a case under chapter 11 of the Bankruptcy Code, in which federal courts have shown sensitivity to the goal of expediting the consummation of the case as promptly as practicable. See, e.g., All American Laundry Serv., 128 B.R. at 646 n.8; J.D. Marshall, 74 B.R. at 655. Indeed, the fact that the Bankruptcy Court has deemed it appropriate to resolve this dispute on

an extremely expedited basis itself illustrates that a speedy resolution is critical to the timely administration of the bankruptcy estate.

In sum, each of the relevant factors illustrates that this case cannot be timely adjudicated in state court. Thus, we reject plaintiff's request for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).

## CONCLUSION

For the foregoing reasons, we deny plaintiff's motion to remand and for mandatory abstention. This case is set for status on January 24, 2002 at 10:00 a.m.

Wayne R. Andersen
United States District Judge

Dated: January 9, 2002